IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                        CRIMINAL ACTION NO. 2:20-cr-00196

ANDRE LAMAR COLEMAN

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's motion to suppress almost three pounds of methamphetamine[1] and $7,061 in cash seized during a search of his residence by the Metropolitan Drug Enforcement Network Team ("MDENT"). I find that neither the warrant application nor the warrant issued contain statements of apparent facts from which a reasonable judicial officer or a reasonable police officer could find probable cause. For the reasons discussed below, Defendant's Motion is **GRANTED in part and DENIED in part.**

I.      The Warrant and the Search

On October 29, 2019, Detective Aldridge of the Charleston Police Department, on assignment with MDENT, presented an application for a search warrant to a magistrate in Kanawha County, West Virginia. According to the warrant application,

_____

1 1,295.5 grams of methamphetamine.

Detective Aldridge believed that there was evidence inside Defendant's home on Lee Street ("the Lee Street Residence") that someone was possessing marijuana in violation of West Virginia Code § 60A-4-401(C)(i). Detective Aldridge included only three relevant statements in support of his warrant application:

(1) Earlier that month, Officer Whitehead of the Charleston Police Department "received information" that "large amounts of heroin" were being distributed from the Lee Street Residence.

(2) Earlier that month, Detective Dennison conducted a controlled buy of narcotics and the Lee Street Residence "was involved with the distribution during the controlled buy."

(3) On October 29, 2019, Detective Aldridge conducted a trash pull investigation of the Lee Street Residence and discovered "multiple marijuana stems." Other items discovered during the trash pull were listed, but the warrant application made no effort to explain their connection to the offense being investigated: possession of marijuana.

The magistrate issued a sweeping warrant authorizing MDENT officers to search the entirety of the Lee Street Residence for evidence of possession of marijuana including, but not limited to, electronic devices, books, financial records, photographs, and address books. Detective Aldridge, accompanied by other MDENT officers, conducted the search. Inside one private bedroom occupied by Mr. Sheldon Mitchell, officers discovered and seized a firearm, ammunition, 252 grams of

suspected marijuana, 40.6 grams of suspected methamphetamine, 25.7 grams of suspected heroin, and $2,941 in cash.

During the search, an officer witnessed an individual, believed to be Defendant, toss a bookbag out a window into the yard of the home. Inside the bookbag, officers discovered and seized 1,295.5 grams of suspected methamphetamine and two firearms. Inside Defendant's private bedroom, officers discovered and seized 10 grams of suspected heroin and $4,120 in cash. Officers also discovered and seized 9.5 grams of marijuana from the home's living room.

A grand jury returned an indictment against Defendant on November 17, 2020, charging him with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); the use and carry of firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Defendant asserts that the fruits of the search cannot be used against him because they were discovered and seized in violation of the Fourth Amendment.

## II.   Applicable Law

The Fourth Amendment to the United States Constitution forbids the government from violating a private citizen's security in their home without first obtaining a warrant. The oath or affirmation of the warrant application must "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "The principal components of a

determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The application for a warrant must include more than "mere conclusory statements" to support a finding of probable cause. *Gates*, 462 U.S. at 239.

While "it is well settled that probable cause may be founded upon hearsay and information received from informants," *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004), a magistrate must know something about the source of information before relying on it to find that probable cause exists. A "judicial officer's assessment of probable cause based upon the totality of the circumstances must include a review of 'the veracity and basis of knowledge of persons supplying hearsay information.'" *United States v. Perez*, 393 F.3d 457, 461–62 (4th Cir. 2004) (quoting *Gates*, 462 U.S. at 238). "Mere confirmation of innocent static details is insufficient to support an anonymous tip." *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993); *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) (finding that confirming "innocuous details" was insufficient to show reliability and veracity of tip).

Finally, evidence from a trash pull investigation can support a finding of probable cause but the Fourth Circuit Court of Appeals has held that "because curbside trash is so readily accessible, trash pulls can be subject to abuse." *United States v. Lyles*, 910 F.3d 787, 792 (4th Cir. 2018). The "open and sundry nature of

4

trash requires that it be viewed with a least modest circumspection." *Id.* A scintilla of evidence from a trash pull cannot, on its own, authorize a sweeping general search of a home. *Id.* However, evidence from trash pull investigations can support a sweeping warrant when the evidence is substantial, *United States v. Gary*, 528 F.3d 324, 326–329 (4th Cir. 2008), or when the investigating officers conduct more than one trash pull investigation, *United States v. Wilkerson*, 808 F. App'x 171, 173 (4th Cir. 2020).

In *Lyles*, officers applying for a search warrant included evidence from a trash pull investigation in the application to support a finding of probable cause. 910 F.3d at 790. There, the trash pull investigation revealed "three empty packs of rolling papers, a piece of mail addressed to the home, and three marijuana stems." *Id.* at 793. In reviewing the probable cause determination on appeal, the Fourth Circuit noted that only one trash pull was conducted, and that it was therefore less likely to reveal evidence of recurrent or ongoing activity. The court concluded that evidence from this single trash pull was too sparse to "provide a substantial basis for the magistrate to find probable cause to search the home for evidence of marijuana possession." *Id.* at 794.

Should I find that the magistrate who issued the warrant in this case did not have a substantial basis for concluding that probable cause existed, the fruits of the search do not necessarily need to be suppressed if the good faith exception to the exclusionary rule applies. The good faith exception provides that "evidence obtained

pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable,'" *Perez*, 393 F.3d at 461 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). But evidence that is obtained pursuant to a search warrant that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" must be excluded. *Leon*, 468 U.S. at 922.

"The key, objectively ascertainable question under *Leon* is whether a reasonably well trained officer would have known that the search was illegal in light of *all of the circumstances*." *United States v. Thomas*, 908 F.3d 68, 73 (4th Cir. 2018) (emphasis in original). "Among those circumstances are 'specific, uncontroverted facts known to the officer[].'" *Id.* However, where a reasonable officer would know that a probable cause determination could not be rendered without information conspicuously absent from his application for a warrant, reliance on the resulting warrant is not objectively reasonable. *United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011).

The reasonableness of relying on the warrant also depends, in part, on the relationship between the crime that the warrant purports to investigate, the evidence offered in support of the warrant, and the scope of the search authorized by the warrant. *See Rogers v. Stem*, 590 F. App'x 201, 208 (4th Cir. 2014) (refusing to apply the good faith exception when the evidence supported a crime other than the one listed in the warrant); *accord Messerschmidt v. Millender*, 565 U.S. 535, 550 (2012)

(considering the crimes noted in the warrant when assessing its reasonableness). The good faith exception does not apply in a case with a bare bones affidavit where the magistrate acted as a "rubber stamp" in approving the search warrant. *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996) (citing *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993)).

*Lyles* is, again, particularly informative. The good faith exception cannot apply in the case of "a flimsy trash pull that produced scant evidence of a marginal offense but that nonetheless served to justify the indiscriminate rummaging through a household." *Lyles*, 910 F.3d at 797. *Lyles*, like the case before me now, concerned a broad sweeping search warrant, authorizing the search of electronic and financial records for evidence of the possession of marijuana based on nothing other than the presence of a few scraps of marijuana in the trash outside the home.

Suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself—those who have standing—not by those who are aggrieved solely by the introduction of damaging evidence. *Alderman v. United States*, 394 U.S. 165, 171–72 (1969). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Id.* at 174. A person has standing to contest a search or seizure only when they have a reasonable expectation of privacy in the evidence.

7

### III.    Analysis

Before considering the merits of Defendant's Motion to Suppress, I must ensure that the Defendant is the proper person to contest the seizure of all the evidence in question. Evidence was seized from four locations: the bookbag in the side yard, the living room, Defendant's private bedroom, and the private bedroom occupied by Sheldon Mitchell. Defendant was a tenant of the home, renting a room, while Mr. Mitchell was the guest of another tenant, staying in a separate bedroom. It is well settled that the Defendant had a reasonable expectation of privacy inside his own private bedroom, the common areas of the house he was renting, and in the curtilage of the home, but I cannot say the same for the bedroom occupied by Mr. Mitchell. The bedroom occupied by Mr. Mitchell was rented by someone other than the Defendant. Each bedroom could be locked from the inside. I find that the Defendant had no reasonable expectation of privacy in the room occupied by Mr. Mitchell. Therefore, the Defendant is not the proper person to bring a challenge to the search of that room and the items found within it. The Defendant's Motion to Suppress as it pertains to the items discovered inside the private room occupied by Mr. Mitchell is **DENIED.** I will now turn to the search of and seizure of items from the common areas of the home, the curtilage, and the Defendant's private bedroom.

The principal question is whether the warrant application states apparent facts sufficient to support the magistrate's conclusion that probable cause existed. *Gates*, 462 U.S. at 238–39. The warrant application presents only three facts: (1) the

unsourced and undescribed information "received" by Officer Whitehouse and later relayed to Detective Aldridge; (2) the Lee Street Residence was "involved" with a controlled buy conducted earlier that month; (3) the marijuana stems discovered in the trash pull investigation.

First, Detective Aldridge stated that Officer Whitehead "received information" that the Lee Street Residence was "distributing large amounts of heroin." But Detective Aldridge did not include a single detail about the original source of this information. Was the information from yet another police officer? An anonymous tip? Was the information merely overheard in an elevator? No one reviewing the warrant would have any way of knowing where this information came from or when Officer Whitehead received it. This is unacceptable. When applying for a search warrant based on hearsay, the applicant must include facts in support of the information's reliability and accuracy.

Detective Aldridge did no such thing here. Because no details were provided about the information's source, it could not support a finding of probable cause that evidence of marijuana possession would be in the Lee Street Residence.

Detective Aldridge also included a barebones account of a controlled buy conducted earlier that month. He stated that "Det. Dennison observed that [the Lee Street Residence] was involved with the distribution during the controlled buy." Detective Aldridge included no details whatsoever about how the Lee Street Residence was supposedly involved with this controlled buy. Was the buy conducted

at the home? Did the person being investigated live at the home? Did someone enter or exit the home during the buy? No one reviewing the warrant application would have any way of knowing how the Lee Street Residence was involved with the controlled buy. The conclusory statement about the Lee Street Residence's role in the controlled buy cannot support a finding of probable cause without any apparent facts to support it.

Having determined that the "received information" and the conclusory statement about Lee Street Residence's involvement in a controlled buy offer no practical support to a finding of probable cause, I am left with the meager evidence from the trash pull investigation. Therefore, it is clear that *Lyles* controls and the fruits of this search must be suppressed.

From the two trash bags taken from in front of the Lee Street Residence, Detective Aldridge discovered "multiple marijuana stems." Detective Aldridge did list other items discovered in the trash pull investigation, but he made no effort to explain how those items were connected to the crime being investigated, possession of marijuana, or how they supported a finding of probable cause.

The evidence here is just as sparse as it was in *Lyles*. From the trash pull in *Lyles*, investigators recovered three empty packages of rolling papers and three marijuana stems. 910 F.3d at 793. Here, officers discovered only the marijuana stems and made no effort to connect anything else discovered in the trash pull to the investigation. Also, like in *Lyles*, officers here conducted only a single trash pull

investigation which is less likely to reveal evidence of recurrent or ongoing activity. None of the additional facts or repeated trash pulls to be found in the cases where the Fourth Circuit has upheld search warrants based on trash pull investigations are present in this case. In the absence of any other acceptable evidence, miniscule scraps of marijuana are insufficient to provide a substantial basis for the magistrate to find probable cause to search the home for evidence of marijuana possession.

Even when considered in the aggregate, the evidence presented to the magistrate in the warrant application is no greater than the sum of its parts. In the same way that even a small child could not sit on a stool with three rotten legs, the magistrate's finding of probable cause cannot be supported by the three dubious justifications provided by the government. I find that there was no substantial basis for the magistrate's conclusion that probable cause existed.

Having found that there was no substantial basis for the magistrate's finding of probable cause, I now turn to whether the good faith exception applies in this case. At this point the government asks me to consider, as I am required to, facts known to Detective Aldridge that were not included in the warrant application. The Government asserts that those additional facts would make Detective Aldridge's reliance on the warrant reasonable.

First, Detective Aldridge was aware of how the Lee Street Residence was "involved with" the controlled buy. According to Detective Dennison's report, the person being investigated during that buy was observed walking through the fenced

yard of the Lee Street Residence. That is the extent of the involvement. No one ever saw that person enter or exit the home. That person merely walked through the fenced yard. Additionally, Detective Aldridge was aware of how very scant the marijuana evidence was in the trash pull.



[ECF No. 41, Ex. A].

Detective Aldridge could not reasonably have believed that the three tiny scraps of marijuana in the trash—unable to cover even a corner of a Post-it note—could support the idea of ongoing or recurrent activity in the home. None of the additional facts known to Detective Aldridge are sufficient to make his reliance on the warrant reasonable.

Also, like in *Lyles*, this warrant was unreasonably broad, bordering on a general warrant, to investigate possession of marijuana. It authorized the search of electronic devices and financial records that have no connection to the offense of marijuana possession.

12

The Fourth Circuit's conclusion in *Lyles* applies as well here as it did there.

> *Leon*'s standard is ultimately an "objective" one. *Id.* at 70.
> And objectively speaking, what transpired here is not
> acceptable. What we have before us is a flimsy trash pull
> that produced scant evidence of a marginal offense but that
> nonetheless served to justify the indiscriminate
> rummaging through a household. Law enforcement can do
> better.

*Lyles*, 910 F.3d at 797.

I fear this is becoming a pattern. Like a case recently in front of me, *United States v. Nelson*, 2:20-cr-00063, --- F. Supp. 3d ---, 2021 WL 1580539 (S.D. W. Va. Apr. 22, 2021), this case represents yet another failure of the Charleston Police Department and MDENT to act within the confines of the Fourth Amendment.

Defendant's Motion to Suppress is **DENIED in part** as it relates to the evidence seized from the room occupied by Mr. Mitchell but **GRANTED in part** as it relates to evidence seized from other parts of the home. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:      April 28, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13